OPINION
Defendant-appellant Concha Hendershot appeals her conviction and sentence from the Licking County Municipal Court on one count of telephone harassment in violation of R.C. 2917.21, a misdemeanor of the first degree.
 STATEMENT OF THE FACTS AND CASE
On February 26, 1999, a complaint was filed in the Licking County Municipal Court charging appellant with one count of telephone harassment in violation of R.C.2917.21, a misdemeanor of the first degree. The complaint alleged that the telephone harassment occurred between January 26 and February 20, 1999. At her arraignment on March 2, 1999, appellant entered a plea of not guilty to the charge. Subsequently, a jury trial commenced on August 2, 1999. The following evidence was adduced at trial. Judith Wayne Thomas, a clinical sociologist and licensed social worker, began treating appellant in April of 1994. While Thomas normally saw appellant during scheduled sessions, sometimes appellant telephoned Thomas between the sessions for "what she [appellant] considered to be an emergency." Trial Transcript at 11. The telephone calls, which were generally brief, sometimes lasted ten to twenty minutes. At trial, Thomas testified that her treatment of appellant ended in June of 1998. According to Thomas, "[t]he specific event that ended it was that Miss Hendershot [appellant] did not show up at a meeting and she, at an appointment, and she indicated that she no longer wished to be in treatment with me." Trial Transcript at 11. Thomas testified that appellant "wanted me to be more than a therapist to her," which caused difficulties in their professional relationship. Trial Transcript at 11. After her counseling of appellant ended in June of 1998, Thomas received numerous telephone calls from appellant. While Thomas initially returned the telephone calls because she was concerned about appellant, Thomas, in June or July of 1998, personally told appellant over the telephone not to call her anymore. Although Thomas was under the impression that appellant understood her, appellant continued calling Thomas. At trial, Thomas testified that "there would usually be two or three days when she [appellant] would call several times a day and then I might not hear from her for a week or two weeks. Trial Transcript at 13-14. Thomas began recording appellant's telephone calls. On or about October 6, 1998, Thomas contacted Steven Cartnal, chief of police for the Village of Granville, Ohio, about allegedly threatening telephone calls from appellant. Thomas testified that she asked Chief Cartnal "to please notify her [appellant] and warn her not to call me again and not to have contact with me or any members of my family." Trial Transcript at 14. At approximately 1:00 p.m. on such date, Chief Cartnal called appellant's telephone number and asked for appellant. According to Chief Cartnal, "I asked for Concha and she [the person answering the telephone] said this is her or this is she." Trial Transcript at 41. Chief Cartnal testified that during his telephone conversation with appellant, which lasted approximately fifteen minutes, he told appellant about Thomas' complaint and told her that she would have to quit calling Thomas. At approximately the same time as Thomas contacted Chief Cartnal, she contacted an attorney and had him FedEx a letter to appellant warning her not to have any contact with Thomas or her family. The letter was dated October 6, 1998. Thereafter, between October 6, 1998, and mid-January, 1999, Thomas did not have any contact with appellant. However, at trial, Thomas testified that appellant telephoned her on January 26, 1999, January 27, 1999, January 30, 1999, and February 20, 1999, and left messages on Thomas' answering machines. In addition to calling Thomas' office, appellant also called Thomas at home. While, during some telephone calls, appellant identified herself, during others, Thomas recognized appellant's voice. Appellant, who also testified at trial, denied making any telephone calls to Thomas during January or February of 1999. Appellant also testified that she did not believe that the man who she previously had talked to on the telephone was, in fact, Chief Cartnal. At the conclusion of the evidence and the end of deliberations, the jury, on August 2, 1999, returned with a verdict finding appellant guilty of telephone harassment. As memorialized by a Journal Entry filed on the same date, appellant was sentenced to 90 days in jail and ordered to pay a fine in the amount of $150.00. However, appellant's jail time was suspended and appellant was placed on probation for a term of three years. It is from her conviction and sentence that appellant now prosecutes her appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL TO WHICH SHE IS ENTITLED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR II THE APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED AS HER CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 ASSIGNMENT OF ERROR III THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS ADMISSION OF A LETTER PURPORTEDLY WRITTEN BY AN ATTORNEY TO THE APPELLANT.
 ASSIGNMENT OF ERROR IV PROSECUTORIAL MISCONDUCT IN THE INTRODUCTION OF IMPROPER AND PREJUDICIAL EVIDENCE DEPRIVED THE APPELLANT OF A FAIR TRIAL.
 ASSIGNMENT OF ERROR V THE TRIAL COURT'S FAILURE TO CONDUCT A COMPETENCY HEARING OR OTHERWISE ADJUDICATE APPELLANT'S COMPETENCY TO STAND TRIAL DEPRIVED THE APPELLANT OF HER RIGHT TO DUE PROCESS AS GUARANTEED UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
For purposes of clarity, we shall address appellant's assignments of error out of sequence.
 II
Appellant, in her second assignment of error, argues that her conviction for telephone harassment is against the sufficiency of the evidence. We, however, disagree. In State v. Jenks (1981),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
Appellant in the case sub judice was convicted of telephone harassment in violation of R.C. 2917.21(A)(5). Such section states as follows: (A) No person shall knowingly make or cause to be made a telephone call, or knowingly permit a telephone call to be made from a telephone under the person's control, to another, if the caller does any of the following: . . . (5) Knowingly makes the telephone call to the recipient of the telephone call, to another person at the premises to which the telephone call is made, or to the premises to which the telephone call is made, and the recipient of the telephone call, or another person at the premises to which the telephone call is made, previously has told the caller not to call the premises to which the telephone call is made or not to call any persons at the premises to which the telephone call is made. (Emphasis added.) At the trial in this matter, Judith Wayne Thomas, the recipient of the telephone calls, testified that she verbally told appellant not to call or otherwise contact her. However, despite such requests, appellant, Thomas testified, telephoned her on three dates in January of 1999 and once in February of 1999. During the evening of January 30, 1999, alone, appellant made three calls to Thomas' home telephone. Audiotapes of the telephone calls were admitted into evidence. Based on the foregoing, we find that appellant's conviction for telephone harassment was not against the sufficiency of the evidence. After reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant, after being told by Thomas not to do so, knowingly made telephone calls to Thomas. Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in her third assignment of error, contends that the trial court erred in admitting into evidence a letter written by Thomas' attorney to appellant at Thomas' request. Appellant specifically argues that such letter, which directed appellant not to call Thomas, was inadmissible since it was not properly authenticated and since it constituted hearsay. Since appellant failed to object at trial to the admission of such letter, we must review such alleged error under a plain error standard Criminal Rule 52(B) specifically provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191. Applying the above standard, we find that appellant has failed to meet her burden of establishing that, but for the trial court's alleged error in admitting the letter, the outcome of the trial would have been different. As is stated above, Judith Wayne Thomas testified at trial that she verbally directed appellant not to call Thomas. Thus, since there was competent and credible evidence presented at trial independent of the letter that appellant had been notified not to call Thomas, the outcome of the trial would not have been different had the letter been excluded. Appellant's third assignment of error is, therefore, overruled.
 IV
Appellant, in her fourth assignment of error, maintains that she was deprived of the right to a fair trial by "prosecutorial misconduct in the introduction of improper and prejudicial evidence." During the trial in this matter, appellee sought to play audiotapes of the telephone calls that Judith Wayne Thomas testified appellant had made to her during January and February of 1999. After the audiotapes were played for the jury, appellant objected to the same since the calls played to the jury were not the telephone calls in question, but rather were calls that had nothing to do with the allegations in the case sub judice. Appellee, in response, apologized for such error, stating that she did not have the audiotapes "queued up correctly" and that she had rewound the tapes too far. Trial Transcript at 22. Thereafter, the trial court gave the following cautionary instruction to the jury: THE COURT: Alright, ladies and gentlemen, this will be perhaps difficult for you to do, but Mr. Morris made an objection. The objection is a valid one. These, these, everything you have listened to off that tape recorder the Court is going to instruct you to put it out of your mind and disregard it totally. Those two messages that you heard have absolutely nothing to do with the allegations in this case. Nothing. I hope that is clear that you are not to consider those communications that were made on that tape as having anything at all to do with the allegations that the State has made in this matter . . . Trial Transcript at 23. As appellant notes in her amended brief, the portion of the audiotape erroneously heard by the jury was not proffered into evidence, and, therefore, is not a part of the record in this matter. It is appellant's duty to ensure that all parts of the record necessary for determination of the appeal are before this court and that the record is properly preserved for review. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19. In order for this Court to review that portion of the audiotapes of the telephone calls that was inadvertently played to the jury and to determine whether prejudice to appellant resulted from the playing of the same, we must necessarily be apprised of the contents of those calls. As appellant has failed to proffer that portion of the audiotapes erroneously heard by the jury or to otherwise preserve the record for appeal, we are unable to determine whether appellant was prejudiced by the playing of the same. Appellant' fourth assignment of error is, therefore, overruled.
 V
Appellant, in her fifth assignment of error, argues that the trial court erred in failing to conduct a competency hearing or otherwise adjudicate appellant's competency to stand trial. R.C. 2945.37 provides in pertinent part: "(B) In a criminal action in a court of common pleas, a county court, or municipal court, the court, prosecutor, or the defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." After the trial commences, the court need conduct a competency hearing only for good cause shown, and the determination of whether the case presents good cause is within the sound discretion of the trial court. State v. Rahman (1986), 23 Ohio St.3d 146 . In deciding whether to sua sponte hold a competency hearing, the court should consider whether counsel has expressed doubts regarding his client's competency, any evidence of irrational behavior, the defendant's demeanor during the trial, and any prior medical opinion concerning the defendant's competency. See State v. Rubenstein (1987), 40 Ohio App.3d 57. The test to determine whether a defendant is competent to stand trial "must be whether he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." State v. Berry (1995), 72 Ohio St.3d 354, 359, citing Dusky v. United States (1960),362 U.S. 402. "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains `sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." See Berry, supra. at 359. Mental illness does not necessarily equate with legal incompetency. Id. at 362. In the case sub judice, trial counsel did not request a competency hearing. However, appellant contends that, based on appellant's answers to questions during cross-examination, the trial court should have sua sponte questioned appellant's competency. However, we find that the record fails to reveal sufficient "indica of incompetency". We concur with appellee that appellant's answers during direct-examination by her attorney demonstrate that appellant had a rational and factual understanding of the proceedings in this matter. The following is an excerpt from such direct examination: Q. Do you admit that you received a letter from Mr. Carr [Thomas' attorney] or Miss Carr regarding no contact with Dr. Thomas? A. Yes I do. Q. And that was dated approximately when? A. That was around October 8th. Q. Did you also make a statement or, that you fully intended not to contact Dr. Thomas? A. Yes I did. With the exception of trying to get ahold of my medical records. Q. Okay, so Dr. Thomas had medical records of yours? A. Yes, she did. Of course, I didn't say that to her. That was to her supervisor, Sheila Porter, in Columbus. Q. Did you ever receive a letter from Dr. Thomas stating that you were finished with any therapy? A. No, I did not. Q. Previously Dr. Thomas stated that your, she was finished with your therapy and that she was done, had no contact with you, I forget the exact date. It was some time in June, I believe. Then she said that she had a contact in August with George Williamson. Were there any other times? A. Yes, there was a, there was a session with Warren Schneider at Mounbuilders where both Dr. Thomas and Warren Schneider came to my home, in which I had tried to make a report to the police department in Granville about this incident, which they did not return my phone call. Chief Cartnal did not return my phone call. Even though he said he was interested in the other side of the story, he wasn't interested in it when it came from me. Q. The, have you obtained your records yet, your medical records yet? A. No, I have not. Q. Did you file, did you indeed file a malpractice suit against Dr. Thomas? A. I have filed a complaint with the Ohio Board of Social Workers in which they asked me to, to wait for a year while they were investigating her. So technically I have not filed a malpractice action against Dr. Thomas. No, I have not. But I will before the day is out. Q. The, uh, she indicates that, or she has these tapes that were part of a, indicating that you contacted her. Did you call Dr. Thoms? A. I contacted her before those dates. The tapes that I heard today are tapes that were from last year. Q. Did she tape items when you were in session? A. Much of our, much of our work was phone work. Trial Transcript at 54-56
Based on the foregoing, we find that the trial court did not err in failing to hold a competency hearing since the record in this matter does not contain "sufficient indica of incompetency." The above testimony demonstrates that appellant presented a defense to the charge of telephone harassment by testifying that she did not contact appellant during January and February of 1999, the dates contained in the complaint. Rather, appellant testified that the telephone calls on the audiotapes were prior to such time. As noted by appellee, "[appellant] knew very well that she was accused of Telephone Harassment against Dr. Thomas, otherwise she could not and would not have presented a defense." Upon our review of the record as a whole, we find that appellant had "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding" and that appellant had both a rational and factual understanding of the proceedings against her. Berry, supra. at 359. Appellant's fifth assignment of error is, therefore, overruled.
 I
Appellant, in her first assignment of error, argues that she was denied the effective assistance of trial counsel. Appellant specifically argues that her trial counsel was ineffective in: (1) failing to object to the admission of the letter from Thomas' attorney to appellant that is the basis for appellant's third assignment of error; (2) failing to move for a mistrial when appellee erroneously played the audiotapes discussed in the fourth assignment of error to the jury and to adequately protect the record on appeal with respect to such assignment; and (3) failing to object to Judith Wayne Thomas' testimony in rebuttal when Thomas testified that she had a civil protection order against appellant. Appellant further contends that her trial counsel was ineffective in failing to make a request for a continuance of the trial when the trial court sustained appellee's objection to the calling of a witness for appellant or, in the alternative, in failing to "make a proffer of that witness's testimony thus protecting and preserving the record for appeal." According to appellant, such witness' testimony was crucial to establishing bias and prejudice on the part of appellee's key witnesses. The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136 . In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Assuming, arguendo, that trial counsel's performance was deficient, we find that appellant has failed to prove that there exists a reasonable probability that, were it not for trial counsel's errors, the result of the trial would have been different. As is stated above, there was competent and credible testimony from Judith Wayne Thomas that appellant had been verbally warned not to call Thomas and that, despite such warning, appellant continued to call Thomas. In addition, we have no information as to what appellant's missing witness would have testified about. Because appellant has not established that her trial counsel's alleged errors prejudiced appellant, we find that appellant has failed to establish that she was denied the effective assistance of trial counsel. Appellant's first assignment of error is, therefore, overruled.
Accordingly, the judgment of the Licking County Municipal Court is affirmed.
Edwards, J. Gwin, P.J. and Wise, concur